### BLOOD *vs.* GOODRICH and others.

A party is not bound by a contract entered into by another as his agent by writing *under seal*, unless the agent has authority *under seal* to enter into such contract.

A subsequent *parol* ratification of such act of the agent will not render the contract obligatory upon the principal; but a *written* recognition, accompanied by other acts *in pais* in confirmation, will, *it seems*, have such effect, provided that notice to produce the authority under which the agent acted, is given to the adverse party.

Where a written contract would be valid if made by *parol*, the time of performance may be enlarged by parol; but this cannot be done where the contract is for the conveyance of land, or is of such a nature that it would not be valid if made by parol.

A vendee of real estate, to whom a deed is to be executed by a certain day, must make demand of the deed, and after allowing a reasonable time for the drawing and execution thereof, must present himself again to receive it; but if on the first demand the vendor refuses to execute the deed, a second is not necessary.

Where there are several persons *jointly* bound to execute a deed, and the deed is demanded of one of them and refused, a demand of the others is not necessary; the refusal of one subjects all to an action.

THIS was an action of *assumpsit,* tried at the Otsego circuit in September, 1830, before the Hon. SAMUEL NELSON, then one of the circuit judges.

The declaration contained seven counts. In the first it is alleged that on the 11th December, 1828, by a certain instrument in writing made between the plaintiff and the defendants, it was agreed that the defendants should sell, and by a good warranty deed convey to the plaintiff 900 acres of land, to be selected by him out of all the unsold lands then belong-

ing to the defendants, situate in Bloomfield, in the state of Ohio, on condition that the plaintiff should deliver to the defendants a good and sufficient warranty deed of certain lands in his possession in the town of Laurens, in the state of New-York, consisting of three parcels, and containing together 88 or 89 acres; the conveyances to be exchanged between the parties, and to be delivered on the first day of March, 1829. It is then further alleged, that on the 31st January, 1829, the defendants agreed to sell the lands to be conveyed to them by the plaintiff to one A. Winsor, and that it was thereupon agreed between the plaintiff and the defendants that the plaintiff should convey such lands to such person or persons as Winsor should designate, instead of conveying the same to the defendants according to the terms of the agreement of December, 1828. The plaintiff then avers, that on the 1st February, 1829, by the order and direction of Winsor, he executed and delivered a deed of two of the parcels to be conveyed by him to O. Hale, and on the 7th July, 1829, executed and delivered a deed of the remaining parcel to one W. W. Robinson; of which conveyances the defendant had notice on the 15th July, 1829. It is also averred in this count, that the plaintiff made a *selection* of lots to be conveyed to him by the plaintiffs, whereof they had notice; but that they refused to perform the agreements made by them. The *second count* states that, in consideration of the agreement of the plaintiff to convey certain lands (before then agreed to be conveyed by him to the defendants) to such persons as one A. Winsor should appoint, the defendants, on the 1st January, 1829, promised and agreed to convey to the plaintiff 900 acres of land, situate in, &c. when they should be thereunto afterwards requested. It is then averred, that on the 7th July, 1829, the plaintiff did convey the lands agreed to be conveyed by him to Hale and Robinson by the order of Winsor, alleging notice to the defendants, and averring a non-performance on their part. The *third count* is like the first, except it is stated, that in the agreement of January, 1829, it was stipulated that the plaintiff *should have such time, after the 1st March,* 1829, for the execution and delivery of the conveyances to be executed by him *as Winsor should appoint,* and that on the 15th July, 1829,

the defendants had notice of the execution of the deeds by the plaintiff to Hale and Robinson, and *ratified and confirmed the same as a due execution of the agreements* between the parties. The *fourth count* is also similar to the first, except that it sets out the agreements with more particularity. The *fifth count* is on a memorandum in writing, alleged to have been made by the defendants on the 10th February, 1829, whereby they agreed to convey to the plaintiff a certain lot of land, known as No. 155, situate in Ohio, and that the same should be included in the conveyance for the 900 acres in the other counts mentioned, when the plaintiff should become entitled to a conveyance for the 900 acres. The plaintiff then avers, that on the 1st August, 1829, he became entitled to such conveyance, of which the defendants had notice; yet, &c. The *sixth count* is a *quantum meruit*, in consideration of the plaintiff having conveyed certain lands *to Hale and Robinson* at the request of the defendants; and in consideration of the defendants having received the avails of such sales, they promised to pay what such lands were worth. And the *seventh count* is in *indebitatus assumpsit* for lands sold to the defendants, to Hale and to Robinson, at their request, and for work and labor, money had and received, &c. The defendants pleaded the *general issue.*

On the trial, the plaintiff produced the instrument set forth in the first count of the declaration. It purported to be an agreement under seal between H. Kingsbury, E. Goodrich, junior, and A. Champion, of the one part, and J. Blood of the other part. It was signed and sealed by the plaintiff, and by Kingsbury, one of the defendants, in this form: " H. Kingsbury for self and Goodrich & Champion, [L. s.]" The plaintiff then proved declarations made by *Goodrich,* one of the other defendants, that he was interested with *Kingsbury* and *Champion,* as a tenant in common, in lands situate in the state of Ohio, that they were jointly concerned in those lands, and that Kingsbury was selling them for the joint concern; and also proved declarations of *Champion,* the other defendant, that he owned lands in the state of Ohio in company with Kingsbury and Goodrich, and that Kingsbury was their agent to sell and dispose of the same. Upon this proof, the plaintiff

asked leave to read the argument to the jury. The counsel for the defendant objected to its being received in evidence, unless authority under seal to Kingsbury from the other defendants was shewn. The judge overruled the objection, and the agreement was read. The plaintiff then proved, that on the 31st January, 1829, *Kingsbury* and *Goodrich*, two of the defendants, having sold to one A. Winsor, certain lands owned by them in the town of Laurens in the county of Otsego, and amongst others, lands which by the agreement of the 11th December, 1828, were to be conveyed by the plaintiff, it was agreed by and between the plaintiff and *Goodrich* and *Kingsbury*, the latter acting for himself and professing to act as the agent of *Champion*, that if the plaintiff would become surety for Winsor, for the payment of the money agreed by him to be paid to Goodrich and Kingsbury as the consideration of the purchase made by Winsor, and would convey to Winsor the lands which he had bound himself to convey to the defendants, or to such persons as Winsor should direct when he should be required so to do by Winsor, (it being understood at the time that as to one parcel of the land the plaintiff would not be able to convey until July then next,) that the defendants would make out a deed of the Ohio lands and send it to him immediately ; in pursuance of which agreement, the plaintiff forthwith executed a bond for $8,200, as the surety of Winsor, and on the 17th February, 1829, on the requirement of Winsor, executed a deed to O. Hale of two parcels of the land agreed to be conveyed by him, and on the 7th July thereafter, on the requirement of Winsor, executed a deed of the remaining parcel to W. W. Robinson. The evidence in relation to this second agreement was objected to by the defendants as inadmissible, on the grounds that being a contract relating to the sale and conveyance of lands, and not being in writing, it was void within the statute of frauds; and that no authority being shewn from Champion to the other defendants to make such alteration in the original contract, the agreement was not binding upon him. The objection, however, was overruled by the judge, and the evidence received. After the conveyances to Hale and Robinson, and in the month of July, 1829, notice of the execution of the

deeds was given to *Goodrich*, and a deed of the *Ohio lands* demanded of him by Winsor, acting as the agent of the plaintiff. Goodrich refused to give the deed, unless Winsor would give him further security for the debt which he, Winsor, owed to the defendants. In *October*, 1829, this suit was commenced; in *November* following *Goodrich* wrote the plaintiff that he had drawn a deed for the Ohio lands, which he might have when he pleased; he might call for it at Utica, or he, *Goodrich*, would send it to Mr. Starkweather, of Cooperstown. In *December*, Mr. Starkweather wrote to the plaintiff, stating that he had received a letter from Goodrich, " saying, your deed is ready, and also that he supposed that there would be an end of the suit." George A. Starkweather, Esq. a brother of the gentleman who wrote the letter to the plaintiff, testified that he once had a deed in his possession from Goodrich and others to the plaintiff for the *Ohio lands*, with instructions to deliver it to the plaintiff, if it was satisfactory; but that it was not called for, and he did not know what had become of it. The plaintiff proved an admission of Kingsbury, that the plaintiff *had made a selection of his lots* and marked them on a map, and also a declaration of his was shewn, that the Ohio lands were worth $4 per acre.

The evidence in relation to the contract respecting lot No. 155, set forth in the 5th count of the declaration was as follows: The plaintiff exhibited a memorandum endorsed on the contract of 11th December, 1828, in these words : " Laurens, February 10, 1829. This certifies that the within named John Blood is entitled to the whole of lot No. 155, situated in Bloomfield, within described, when the said Blood is entitled to the other lands within described, and the above named lot of land is to be included in the same deed, for value received. (Signed) H. Kingsbury for self and Goodrich and Champion." The signature thereto was in the handwriting of Kingsbury. The whole of this evidence was objected to, but received. On the part of the defendants it was proved that the plaintiff had admitted that on the 1st March, 1829, Kingsbury tendered him a deed of the Ohio lands, and that he did not receive it, because he was not then ready to convey on his part.

The evidence being closed, the counsel for the defendants raised various objections to the right of the plaintiff to recover, all of which were overruled by the presiding judge, who charged the jury that the plaintiff was entitled to recover for all the land agreed to be conveyed to him, at the rate of four dollars per acre, with interest on the sum to which the same amounted from the time that the demand of a deed was made of Goodrich. The jury found a verdict for the plaintiff for $4,445,75 damages, and six cents costs. The defendants having taken exceptions in the progress of the trial, now moved for a new trial.

*J. A. Spencer & M. T. Reynolds*, for the defendants. The agreement of 11th December, 1828, was not the act of Champion and Goodrich, two of the defendants. It is *under seal*, and purports to be executed by Kingsbury for himself, and as the attorney of the other defendants. Unless Kingsbury had authority *under seal* from Champion and Goodrich he could not bind them by such a contract. 5 *Mass. R.* 40. 7 *T. R.* 207. 3 *Com. Law R.* 54. 7 *Cowen*, 453. 1 *Wendell*, 326. 3 *Johns. Cas.* 180. 5 *Binn.* 613. 2 *Dallas*, 246. 6 *T. R.* 176. 2 *Johns. R.* 213. 13 *id.* 307. 2 *Caines*, 254. The defendants, as joint owners of real estate are tenants in common, but not partners. 15 *Johns. R.* 159. 4 *Cowen*, 163. 4 *Mass. R.* 424. If the agreement under seal could be considered the act of Champion and Goodrich, as well as of Kingsbury, the plaintiff was not entitled to recover, as by it performance of the stipulations on his part was a condition precedent, which was neither averred nor proved. 2 *Wendell*, 587. 8 *Johns. R.* 322. 13 *id.* 94. 3 *T. R.* 590. 1 *East*, 619. Nor could he avail himself of the agreement of 31st January, 1829, it being void, within the statute of frauds, being a parol contract relating to lands; if void, it could not alter, revoke or modify the former contract. 15 *Johns. R.* 200. Evidence to enlarge the time for performance of a written contract is admissible only when the contract is of such a nature that it would be good, although not in writing. *Sugd. on Vend.* 87 *to* 100.

1 *Phil. Ev.* 498.   *Roberts on Frauds,* 81.   14 *Johns. R.* 358.
5 *Cowen,* 162.   Nor does the fact that the last contract was
in part executed help the plaintiff, for it is well settled that a
part performance does not aid a void contract.   2 *Johns. R.*
221.  6 *Vesey,* 39.   1 *Pick.* 328.   11 *Mass. R.* 342.   6 *East,*
602.   *Freeman,* 486.   If, however, the agreement of *Jan-
uary* be considered valid, there was no proof of *Champion*
being a party to it, or of his having in any way whatever
ratified it.  But if all other objections fail, the plaintiff was
not entitled to recover, he not having shewn that the deed
was properly demanded from the defendants; he should
have tendered a deed to be signed, or after waiting a rea-
sonable time subsequent to the first demand to enable the de-
fendants to prepare a deed, he should have made a second
demand.  *Sugd. on Vend.* 164, 261, 262.   6 *Cowen,* 13.  7 *id.*
53.   3 *Wendell,* 249.   20 *Johns. R.* 130.   Besides, the deed
should have been demanded of all the defendants, otherwise
a party not in default may be subjected to damages.

*J. B. Hunt & Greene C. Bronson,* (attorney-general,) for
the plaintiff.   The action is not on the agreement of *Decem-
ber;* that is but inducement to the contract of the follow-
ing *January,* and mere evidence in explanation thereof.   It
was not necessary, therefore, to shew an authority *under
seal* to Kingsbury from his co-defendants to execute the
contract of December.   The plaintiff's claim is founded up-
on a contract of which the written agreement and the sub-
sequent modification thereof are the evidences, and all
that was incumbent upon the plaintiff to do to sustain his
action was to shew that the contract thus made, wheth-
er by Kingsbury alone, or by Kingsbury and Griswold had
been assented to and ratified by all the defendants, and
that he, the plaintiff, had performed on his part all that
he had engaged to do.   Performance by the plaintiff is ful-
ly proved; the assent of Goodrich to the contract made
by Kingsbury is manifest; not only from his declarations
and acts, but from written evidence; and the fact appear-
ing that a deed of the Ohio lands was executed, ready for
delivery, shews the ratification of the contract by Champion
also; for unless he executed it, the deed could not be rea-

dy for delivery. Thus an *executed*, not an *executory* con-
tract is shewn, and the statute of frauds has no application
to the case. The terms of the special agreement having
been performed on the part of the plaintiff by conveying his
lands in pursuance of the contract with the defendants, who
reapt the benefit of such performance, and the plaintiff, at
all events, having sustained loss to the value of the property
conveyed, *indebitatus assumpsit* lay. 4 *Cowen*, 564. 1 *Johns.
Cas.* 22. 3 *Johns. R.* 520. 14 *id.* 330. 15 *id.* 203. 5
*East*, 293. No more can be required of the plaintiff than
was done by him in relation to the demand of the deed ;
having a right to the whole title, he was not bound to make a
demand each of the defendants. The deed being refused by
one, it was useless to make a demand of the others.

*By the Court*, SAVAGE, Ch. J. The first question is wheth-
er the agreement of December 11, 1828, is binding upon all
the defendants? This contract is the basis of any liability
which may rest upon any or all of the defendants. It was
signed by Kingsbury, " for self, Goodrich and Champion "
The proof of the execution by Kingsbury proves nothing
against the other defendants. It shews the instrument to be
the deed of Kingsbury ; but to make it the deed of Goodrich
and Champion, something else must be proved ; it must be
shewn that Kingsbury had authority to act for them ; and
as he professes to act by deed, an authority from them un-
der their seals is indispensable. " An authority to execute
a deed must be given by deed." 1 *Comyn's Dig.* Att'y C.
5. In the case of *Banorgee* v. *Hovey*, 5 *Mass. R.* 11, the ac-
tion was assumpsit for money advanced to one Smith, who
was concerned with and had authority from the defendants
to procure it. Smith gave a bond, which his authority did
not specify, and the court held the defendants not bound, as
Smith attempted to bind his partners and employers by deed
without any authority so to do. In that case the objection
is admitted to be technical, but not therefore to be disre-
garded. 5 *Bin.* 613, and 1 *Yeates*, 200, are to the same effect.
Even partners are not permitted to bind their co-partners
by seal, unless the co-partners are present and assenting.

In *Ball* v. *Dunsterville and another*, 4 *T. R.* 313, the action was on a bill of sale executed by one of two partners, in the presence and by the authority of the other, but there was but one seal; the court held the execution sufficient, and they relied principally on this deed having been executed by one defendant, for himself and the other, *in the presence of that other*. And the same court, in *Harrison* v. *Jackson and others*, 7 *T. R.* 207, held the instrument invalid against partners, when that circumstance was wanting. There the execution was like the execution of the agreement in this case. One of the partners, Sykes, signed " For Jackson, self and Rushforth, W. Sykes." And the court held it was not obligatory upon Jackson and Rushforth, as they were not present and assenting. In pursuance of this principle, this court held, in *Mackay* v. *Bloodgood*, 9 *Johns. R.* 285, 6, that a bond signed by one of two partners, with the partnership name, was good, when the other partner had seen and read it, and had assented that his partner should execute it for both, although he was not actually present when the signature was put to the instrument, but was about the store when the bond was signed. The same point was recently before this court in *McBride* v. *Hogan*, 1 *Wendell*, 326, and decided in the same way. So in the case of *Striglitz* v. *Egginton and others*, 1 *Holt*, 141, where one of the defendants signed a bond, " For self and partner," Chief Justice Gibbs says, " the authority to execute must be by deed." He adds, that if one partner who does not execute, acknowledge that he gave an authority, that must be presumed to be a legal authority, and it must be under seal and produced. One man cannot authorize another to execute a *deed* for him but by *deed*, and no subsequent acknowledgment will do.

The defendants in this case were not partners, but tenants in common, of the lands in Ohio, which were to be conveyed to the plaintiff. One tenant in common has no power as such to convey or dispose of the lands of his co-tenant, and cannot execute a deed of the lands of his co-tenant in any other manner than a stranger. That an authority to execute a deed must be given by deed, to render the deed valid, was recognized by this court in *Van Ostrand* v. *Reed*, 1 *Wendell*, 431.

In that case the judge at the trial rejected the evidence of the person whose name had been used, when called to prove that he authorized it—that was not an action upon the instrument, but where it came in collaterally. This court thought the evidence should have been received to disprove fraud; to prove which, the fact had been shewn that the name of the witness had been put to the instrument by others. That case, however, recognizes the general principle. An authority under seal should therefore have been produced from Goodrich and Champion to Kingbury, allowing him to execute the contract in question, or all contracts generally respecting their lands; a parol authority is not sufficient. And this comports with other principles. No man shall be divested of his interest in real estate, but by his own acts and by operation of law; if an authority by parol may be shewn, a man may be made to convey all his estate, and the conveyance rest entirely in parol. As to Goodrich, all his acts and his letters recognize the contract as his; there is, therefore, something more than mere parol declarations to charge him; and I am inclined to think that as to him, if under the circumstances the evidence was admissible, an authority was sufficiently shewn—it was not by deed, but he admits in writing that he had executed a deed. It was said by Ch. J. Gibbs, in *Striglitz* v. *Egginton*, that no subsequent acknowledgment will do. A subsequent *parol* acknowledgment was probably intended, but I should be unwilling to say that a subsequent *written acknowledgment*, accompanied by acts recognizing the deed as the deed of him whose name had been used, was not proper evidence to be submitted to a jury. It is indeed said in the case last referred to that if an authority be admitted by parol, it must be presumed to be a legal authority under seal, and must be produced; and such would seem to follow from general principles. The plaintiff should therefore have either produced the authority from Goodrich and Champion to Kingsbury, or given the defendants notice to produce it; and on their neglecting or refusing to do so, inferior evidence and such acts as would imply an authority would be admissible. It seems to me therefore that before any evidence could strictly and regularly have been received of the acts and acknowl-

NEW-YORK,
May, 1832.

Blood
v.
Goodrich.

edgments of Goodrich, notice should have been given to produce the authority by virtue of which Kingsbury acted.

The same observations apply to the evidence respecting Champion's admissions; they were merely parol and general that he owned lands in Ohio in company with the other defendants, and that Kingsbury was their agent to sell and dispose of them. The legal presumption is, that he spoke of a legally authorized agency; but no appointment is produced, no notice to the defendants to produce it, no act of Champion's in affirmance of the contract made by Kingsbury, and no allusion in his conversation to this case. To admit evidence of this description would be a total dispensation with the rule that an authority to execute a deed must be by deed; it would be dangerous in its consequences, and alarming to the owners of real estate.

If, however, the contract of the 11th December had been proved, that was all the contract with which Champion had any connection even nominally and by it Blood's conveyance on the 1st of March, 1829, was a *condition precedent* to the conveyance to be made by the defendants; there is no pretence that a conveyance by Blood was then offered. Indeed, it is proved by the declarations of Blood that on that day an offer was made by the defendant Goodrich to fulfil the contract on his previous performance. If, therefore, the plaintiff had declared upon the sealed contract, and its execution by all the defendants had been proved, no cause of action is shewn, but is disproved. The plaintiff, however, does not rely upon the sealed contract, except as inducement to a parol contract—a parol contract to sell and convey lands; a contract void by the statute of frauds, made by two of the defendants only, and without any authority whatever from the third. The plaintiff contends that the parol contract of the 31st January, 1829, was valid as a mere extension of the time of performance of the sealed contract. The rule is well established, that a written instrument shall not be contradicted by parol, but any ambiguity about it may be explained, or an additional agreement affecting the subject may be made by parol when a parol agreement is valid. Such was the case of *Franchot* v. *Dart*, 5 *Cowen*, 506. There no place having been

mentioned in the agreement itself where it should be perform-ed, the parties appointed a place by parol. To make that case applicable here, it should have been shewn that no time had been appointed in the written contract. Time here was of the essence of the contract, and the plaintiff having failed to perform on his part, the defendants are discharged from the contract. There are cases when the time of performance of a written contract may be enlarged by parol; but, I apprehend, that doctrine does not apply to contracts for the conveyance of land, or to any other contract, where the contract itself would not have been valid if made by parol. In *Keating* v. *Price*, 1 *Johns. Cas.* 22, the court say: "This being originally a simple contract, we are of opinion that it was competent for the parties, by parol agreement, to enlarge the time of performing it."

It was further objected that the plaintiff should have prepared and tendered a deed to each of the defendants for execution. I understand the rule in this state to be, that the party entitled to the deed must demand it; if it is not refused, he should, allowing a reasonable time for the defendant to prepare and execute it, present himself again to receive it, 7 *Wendell*, 129; but if, on demand, the defendant positively refuses, it would be idle to make another demand. So, too, the party is entitled to the whole title, and if upon demand any one of those whose duty it is to convey, refuses to do so, it would be unnecessary to make demand of the others. In this case the demand was made of Goodrich, who refused; there was therefore no necessity to call on Kingsbury or Champion, for if they should convey, the plaintiff would not have the whole title.

It is unnecessary to discuss any other points in this case. In my opinion the plaintiff failed to prove the contract of December 11th, 1828, and therefore a new trial must be granted.